BARBARA S. BECKWITH, EXECUTRIX OF THE ESTATE OF PETER OBERDORF BECKWITH v. JAMES M. LLEWELLYN, WILLIAM P. THOMPSON, THOMPSON, PADDOCK & LLEWELLYN, RICHARD A. VINROOT, A. WARD McKEITHEN AND ROBINSON, BRADSHAW & HINSON, P.A.

No. 8826SC677

(Filed 16 May 1989)

**Judgments § 16; Attorneys at Law § 7.1 — wrongful death action — attorney's fee — collateral attack on judgment**

> The trial court correctly granted summary judgment for defendants in an action for malpractice and breach of fiduciary duty against the attorneys in a wrongful death action where plaintiff, as executrix of the estate of her husband, had filed a wrongful death action; defendants had represented her in that action; the action was settled; and the settlement was submitted and approved by the court pursuant to N.C.G.S. § 28A-13-3(a)(23). The essence of plaintiff's claims in this action is to dispute the attorney's fees received by defendants in the settlement of the wrongful death suit and in effect to change the amount of fees awarded to defendants in that action. Although defendants were not parties in the wrongful death suit, the settlement order was binding and final as to their entitlement to attorney's fees in that action and they are therefore entitled in this action to the benefit of the doctrine of collateral estoppel.

Judge BECTON dissenting.

APPEAL by plaintiff from *Griffin, Kenneth A., Judge*. Judgment entered 4 February 1988 in MECKLENBURG County Superior Court. Heard in the Court of Appeals 25 January 1989.

Plaintiff is a resident of Mecklenburg County and is the executrix of the Estate of Peter Oberdorf Beckwith, plaintiff's deceased husband. Defendants Vinroot and McKeithen are residents of Mecklenburg County and are licensed to practice law in North Carolina. Defendant Robinson, Bradshaw & Hinson, P.A., is a Charlotte, North Carolina law firm where individual defendants Vinroot and McKeithen were employed as principals and agents.

Individual defendants Llewellyn and Thompson are residents of the State of Arkansas and are licensed to practice law in that state. Defendant Thompson, Paddock and Llewellyn, P.A., is a

Smith, Arkansas law firm where Llewellyn and Thompson were principals and employees.

Plaintiff's decedent, Peter Beckwith, died as a result of a plane crash in Jackson County, Georgia, on 11 March 1982. Plaintiff subsequently qualified in Mecklenburg County as the executrix of her husband's estate. In her capacity as executrix, plaintiff consulted legal counsel in Charlotte concerning the institution of a wrongful death action on behalf of the estate. Plaintiff asked defendant Llewellyn, who was a friend of plaintiff and her husband, to investigate a possible cause of the crash. Defendant Llewellyn's investigation disclosed information concerning problems with the plane, which suggested possible liability on the part of the manufacturer. Plaintiff's Charlotte counsel indicated to plaintiff that he would undertake the wrongful death litigation for a forty percent (40%) contingency fee. Plaintiff asked defendant Llewellyn about the reasonableness of the fee and a possible conflict of interest with another lawyer from Winston-Salem who was representing the owner and pilot of the plane and the insurer and who was to work in conjunction with the Charlotte counsel. Llewellyn told plaintiff that his firm charged a fee of approximately one-third for similar work but that 40% might be reasonable for two attorneys in North Carolina. Llewellyn also indicated there might be a conflict of interest in being represented by the Winston-Salem lawyer. Plaintiff expressed an interest in having defendant Llewellyn and his firm represent the estate. Llewellyn informed plaintiff that he could not handle the case alone and that his partners would have to agree to represent plaintiff. Plaintiff was also told that retention of local counsel in the Charlotte area should be considered. A meeting in Charlotte was set up between plaintiff and defendant Thompson, who had compiled further information about the plane, to discuss the facts of the case and the possibility of representation. The partners in the law firm agreed to represent plaintiff if she wanted them. Plaintiff and defendant Llewellyn discussed a written employment contract. Llewellyn pointed out to plaintiff that the fee charged to plaintiff for representation in the wrongful death litigation would not be reduced by any subrogation amounts that were subject to repayment and that local counsel would still have to be retained. Llewellyn also pointed out that the expenses involved in the litigation would be considerable because of travel problems and that the cost of local counsel would be an expense of the litigation to be paid before the firm's fee was calculated. Plaintiff indicated

that these terms were acceptable and executed a letter to the firm to proceed with the litigation. In this letter plaintiff agreed to pay the firm a fee of 33⅓% of any recovery as a result of the litigation and that this amount would be calculated after the costs of litigation had been deducted. Included in the costs of litigation were the costs of employing local associate counsel. Some time after the execution of the letter the defendants Llewellyn and Thompson employed defendants Vinroot and McKeithen and the firm of Robinson, Bradshaw and Hinson, P.A., as local counsel in the litigation. Prior to retaining the local counsel, defendant Llewellyn contacted plaintiff and pointed out that as the services of the local counsel would be considered an expense, the local counsel's fee would be deducted before the Thompson firm's fee would be calculated. Llewellyn once again pointed out to plaintiff that when the Thompson firm took the case it was with the understanding that local counsel would have to be hired and that this cost would be in addition to the Thompson fee. Plaintiff agreed that was the understanding and stated that she was satisfied with the arrangement with the Robinson firm.

The wrongful death action was commenced on or about 19 December 1983 and pursued by the firms through 19 December 1984 in the United States District Court for the Western District of North Carolina on behalf of the plaintiff individually, on behalf of the plaintiff as guardian of the minor children and on behalf of the estate. Negotiations concerning a settlement were held between the parties to the wrongful death claim. From July 1984 through December 1984, defendant Llewellyn communicated settlement offers from the defendants in the wrongful death suit to plaintiff. Some of these settlement offers were for structured settlements. In November 1984, defendant Llewellyn told plaintiff that the settlement offers had reached an amount of approximately $2.4 million in present value, the amount which plaintiff's lawyers were hoping to obtain for her. Defendant Llewellyn presented the plaintiff with the settlement proposal and recommended that the plaintiff accept the settlement. Llewellyn explained that the settlement appeared to have a value of approximately $4.2 million and met the goal of approximately $2.4 million net to the plaintiff after fees and costs. Plaintiff accepted the settlement proposal. After plaintiff agreed to the settlement another attorney was employed by defendants to examine the proposed settlement and render an opinion concerning the reasonableness of the settlement and be

prepared to make an independent representation to the court to assist the court in determining whether the settlement should be approved. This service was charged as an expense to the case. The deceased was survived by minor children and court approval was required under N.C. Gen. Stat. § 28A-13-3(a)(23).

On 18 December 1984 plaintiff met defendants in the office of defendants McKeithen and Vinroot. At that time defendant Vinroot went over the proposed settlement in detail, particularly as it related to attorney's fees and how they were calculated. Defendant Vinroot asked plaintiff if she agreed to the distribution of the amounts under the settlement agreement. Plaintiff agreed with the distribution.

Prior to the hearing to approve the settlement, plaintiff was advised that her earlier letter authorizing the Thompson firm to proceed with the wrongful death litigation and setting the amount of attorney's fees was inappropriate for a structured settlement. Plaintiff was told to execute another letter which dealt with payments under the structured settlement, monies received as a result of discovery abuse, litigation costs, and how payments to extinguish subrogation rights and fees and expenses incident to probate proceedings would be paid.

On 19 December 1984 plaintiff again met with defendants in the office of defendants McKeithen and Vinroot, at which time defendant Vinroot again went over in detail with plaintiff the terms of the proposed settlement. Plaintiff was told that the present value of the settlement had been recalculated to be $3,985,000 as opposed to the earlier estimate of $4.2 million. The attorney's fees were approximately 42.6% of the settlement amount rather than just under 39% which was anticipated earlier when the proposed settlement was approved. Plaintiff acknowledged that she understood the changes in the proposed settlement distributions and that the settlement was acceptable to her as it was. Plaintiff also indicated that she wanted the court to approve the distribution set forth in the proposed settlement.

On 19 December 1984, plaintiff, through counsel, petitioned the Superior Court of Mecklenburg County for an order approving the settlement of the wrongful death suit. Included in the petition was a reference to plaintiff's agreement with defendants as to counsel fees to be paid in the wrongful death suit, and attached to the petition was an exhibit consisting of a letter agreement

BECKWITH v. LLEWELLYN

[93 N.C. App. 674 (1989)]

setting out the payments to be made under the settlement. Those payments were as follows:

Monthly Payments
To Barbara Beckwith:

$6,250 monthly, commencing December 15, 1985,
with a 4% annual increase compounded for the life
of Barbara Beckwith, or 240 months, whichever is the
longer.                                                   $ 5,381,630*

Deferred Payments
To Barbara Beckwith:

| | |
|---|---:|
| December 1, 1989 | 150,000 |
| December 1, 1994 | 200,000 |
| December 1, 1999 | 450,000 |
| December 1, 2004 | 600,000 |
| December 1, 2009 | 1,000,000 |

Additional Deferred Payments
To Barbara Beckwith (or children):

| | |
|---|---:|
| June 1, 1990 | 100,000 |
| June 1, 1991 | 100,000 |

Deferred Payments To
Thompson, Paddock & Llewellyn, P.A.:

| | |
|---|---:|
| May 15, 1985 | 250,000 |
| May 15, 1986 | 250,000 |
| May 15, 1987 | 250,000 |
| May 15, 1988 | 250,000 |

Initial Payment at time
of settlement (of 1,100,000)
to be applied as follows:

| | |
|---|---:|
| Reserve for costs | 15,000 |
| Robinson, Bradshaw & Hinson, P.A. | 380,000 |
| Thompson, Paddock & Llewellyn, P.A. | 500,000 |
| Barbara Beckwith | 205,000 |
| | $10,081.620 |

*Based upon normal life expectancy

BECKWITH v. LLEWELLYN

[93 N.C. App. 674 (1989)]

Plaintiff filed the present action on 21 April 1986. In the complaint, plaintiff alleged malpractice and breach of fiduciary duty, intentional disregard of duty, conspiracy and negligence. Plaintiff sought damages in excess of $10,000, punitive damages and costs.

On 6 August 1986 defendants filed a motion for summary judgment on the grounds, *inter alia*, that plaintiff's action constituted a collateral attack on the order of the Superior Court approving the settlement and attorney's fees in the wrongful death suit.

The trial court granted defendants' motion for summary judgment on 4 February 1988. Plaintiff appealed from that order.

*Browder, Russell, Morris and Butcher, P.C., by James W. Morris, III; and James, McElroy & Diehl, P.A., by William K. Diehl, Jr., for plaintiff-appellant.*

*Jones, Hewson & Woolard, by Harry C. Hewson and Hunter M. Jones, for defendants-appellees.*

WELLS, Judge.

Plaintiff assigns error to the trial court's grant of summary judgment for defendants.

Article 13 of Chapter 28A of the North Carolina General Statutes sets forth the powers and duties of personal representatives of decedents' estates. G.S. § 28A-13-3(a)(23) (1988) provides in pertinent part that personal representatives have the power and duty:

(23) To maintain actions for the wrongful death of the decedent . . . and to compromise or settle any such claims, whether in litigation or not, provided that any such settlement shall be subject to the approval of a judge of superior court unless all persons who would be entitled to receive any damages recovered under [the wrongful death act] are competent adults. . . .

As we have noted in our factual synopsis, the proposed settlement of plaintiff's wrongful death suit was submitted to Judge Griffin for approval. In his Order of 19 December 1984 approving the settlement agreement, Judge Griffin made extensive findings of fact as to the type and quality of services provided by the defendants in the wrongful death action, and found and concluded that the fees agreed upon were fair and reasonable and in the best interest of the beneficiaries of the Estate of Peter Beckwith.

He ordered that plaintiff, as personal representative of the Estate of Peter Beckwith, be authorized and directed to execute the settlement agreement and ordered that the attorney's fees incurred in the wrongful death action be paid.

The doctrine of estoppel by judgment is firmly entrenched in the law of this State. *See Vann v. N.C. State Bar,* 79 N.C. App. 166, 339 S.E. 2d 95 (1986) and cases cited and relied upon there.

> It is fundamental that a final judgment, rendered on the merits, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to parties and privies, in all other actions involving the same matter.

*Id. (quoting Bryant v. Shields,* 220 N.C. 628, 18 S.E. 2d 157 (1942) ).

The essence of plaintiff's claims in this action is to dispute the attorney's fees received by defendants in the settlement of the wrongful death suit, and in effect to change the amount of fees awarded to defendants in that action. We perceive this action to be a collateral attack on the judgment approving the structured settlement and attorney's fees in the wrongful death suit.

"It is settled law that a judgment which is regular and valid on its face may be set aside only by motion in the original cause in the court in which the judgment was rendered." *Jeffreys v. Snipes,* 45 N.C. App. 76, 262 S.E. 2d 290, *disc. rev. denied,* 300 N.C. 197, 269 S.E. 2d 624 (1980). "Such a judgment may not be attacked collaterally. Neither may a direct attack be maintained in an independent action." *Id.* at 78, 262 S.E. 2d at 291. "A collateral attack is one in which a plaintiff is not entitled to the relief demanded in the complaint unless the judgment in another action is adjudicated invalid." *Thrasher v. Thrasher,* 4 N.C. App. 534, 167 S.E. 2d 549, *cert. denied,* 275 N.C. 501 (1969).

In the present case plaintiff petitioned the trial court for an order approving settlement in the wrongful death suit as required by G.S. § 28A-13-3(a)(23). This settlement included provisions for attorney's fees. The petition also included provisions which indicated that plaintiff agreed to pay a certain amount of attorney's fees to defendants. Plaintiff executed the settlement agreement herself and defendants executed the petition for court approval on her behalf. Defendant's forecast of evidence indicates the trial court questioned plaintiff about her understanding of the settlement, her approval of attorney's fees and the work of her attorneys. Plain-

BECKWITH v. LLEWELLYN

[93 N.C. App. 674 (1989)]

tiff approved the settlement and distribution of fees. The trial court then signed an order approving the settlement and the fees. This action by the trial court constituted a valid final adjudication of the appropriate level or amount of attorney's fees. There can be no collateral attack on that judgment. Although defendants here were not "parties" in the wrongful death suit, the settlement order was binding and final as to their entitlement to attorney's fees in that action, and we therefore hold that they are entitled in this action to the benefit of the doctrine of collateral estoppel to defeat plaintiff's claims against them.

Summary judgment is appropriate for the disposition of cases where there is no genuine issue of fact, and its purpose is to eliminate trials in cases where only questions of law are involved. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). The materials before the trial court in this case showed that defendants were entitled to judgment as a matter of law. The judgment of the trial court must be and is

Affirmed.

Judge JOHNSON concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

The contract entered into between plaintiff and defendants called for defendants to receive 33⅓%, plus expenses, of any recovery in the wrongful death action. The lawyers collected fees amounting to at least 42.6% and arguably, as much as 55% of the settlement.

Plaintiff's complaint is grounded on allegations of breach of fiduciary obligation and negligence. In my view, these contentions adequately state a cause of action for attorney malpractice. *See, generally*, R. Miller & J. Smith, Legal Malpractice, ch. 11 (3d ed. 1989) (fiduciary duties); *see Hodges v. Carter*, 239 N.C. 517, 519-20, 80 S.E. 2d 144, 145-46 (1954) (negligence). I do not agree that this new and separate cause of action constitutes a collateral attack by plaintiff upon the settlement.

I would reverse the judgment of the trial judge and, accordingly, I dissent.